UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDULLAH SPENCER NIMHAM-EL-DEY,<br><br>                    Plaintiff,<br><br>          -against-<br><br>MISSION OF THE IMMACULATE VIRGIN;<br>B.C.W.; N.Y.C.,<br><br>                    Defendants. | 1:21-CV-8239 (LTS)<br><br>ORDER |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Abdullah Spencer Nimham-El-Dey, who is presently held in the North Infirmary

Command on Rikers Island, filed this *pro se* action asserting the following claims: "failure to

protect, gross negligence, and attractive nuisance." (ECF 2, at 2.) He sues the following

defendants: (1) the Mission of the Immaculate Virgin ("MIV"), of Staten Island, New York (now

known as Catholic Charities of Staten Island); (2) "B.C.W." (the Board of Child Welfare

("Board"), which Plaintiff alleges is now known as the New York City Administration for

Children's Services ("ACS")); and (3) "N.Y.C." (the City of New York). He seeks injunctive

relief and damages. The Court construes Plaintiff's complaint as asserting claims under 42

U.S.C. § 1983 and state law.

By order dated October 8, 2021, the Court granted Plaintiff's request to proceed without

prepayment of fees, that is, *in forma pauperis* ("IFP").[1]

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

For the following reasons, the Court directs Plaintiff to show cause within 30 days of the date of this order why the Court should not transfer this action to the United States District Court for the Eastern District of New York.

## DISCUSSION

Plaintiff, who is African-American, alleges the following: In 1986, when Plaintiff was 13 years old, the Board placed him into the care of MIV on Staten Island. MIV's facility was located in a Staten Island neighborhood in which Confederate battle flags were hung outside many houses. During a trip to a local store with an MIV staff member and other MIV children, Plaintiff, the MIV staff member, the other MIV children, and the store's owners were threatened by group of "Aryan Nation men (KKK)" ("the mob") who threw beer bottles, used racial epithets, and demanded that Plaintiff's group leave the store. (ECF 2, at 8-9.) The MIV staff member fled with the other children, but left Plaintiff at the store. The store owners, fearing damage to the store, told Plaintiff to leave. Plaintiff fled and the mob chased after him, throwing beer bottles at him. The mob eventually caught up with Plaintiff and beat him.

While the mob was beating Plaintiff, a police cruiser appeared and one of the police officers in the cruiser asked the mob, "What do we have here boys?" (*Id.* at 9.) The mob responded, "We got ourselves a running scared nigger!" (*Id.*) One of the police officers told Plaintiff, "Get up boy," and asked him "ain't you one of 'em boys from [MIV]?" (*Id.* at 10.) Plaintiff said yes, and explained that an MIV staff member had abandoned him at the store. The officer then told him to "get going" back to MIV, and that he would "hold 'em off for as long as" he could. (*Id.*) Plaintiff tried to explain that it was an hour-long walk back to MIV, and that he would not make it because he was injured. But the officer told him, "Just get, boy!" (*Id.*) Plaintiff then left the area.

Moments later, the mob began to pursue Plaintiff again; he tried to hide, but a member of the mob eventually found him. That person tied Plaintiff to a "quadra-ped" vehicle and dragged him to the rest of the mob, who then dragged Plaintiff again to a cliff; they decided to throw him off the cliff. (*Id.*) They threatened to kill Plaintiff with a shotgun unless he jumped off the cliff; they shot at the ground at his feet, but he still refused to jump. They then threw him over the cliff; he fell 70 feet into water. Plaintiff survived the fall, but the mob retrieved him and tied him to the same vehicle as before. They then brought him to a tree, stabbed him in the chest, and attempted to hang him from the tree. A woman who was with the mob, and who was the daughter of one of the police officers Plaintiff had previously encountered, screamed and tried to stop what was happening; the mob "listened to her and let [Plaintiff] down." (*Id.* at 11.)

The police cruiser that Plaintiff had previously encountered then appeared again and the police officer that Plaintiff previously spoke to told him to get into the cruiser. The police took Plaintiff back to MIV. When they arrived, the police officer told the MIV staff member who had fled the store, "You need to take care of your nigger boys more better, he nearly died out there, my daughter saved him!" (*Id.* at 12.) The staff member refused to bring Plaintiff to the MIV infirmary because "there would have to be a report." (*Id.*) Days later, Plaintiff ran away from MIV.

One or two years later, the Board again placed Plaintiff into the care of MIV. Plaintiff reported to MIV officials "about the dangers for black children," but they told him that "because there was no record of the incident, they couldn't do anything, [and that he] would have to deal with that issue. . . ." (*Id.*) Later, while Plaintiff was residing at MIV, the same police officer that he had previously encountered visited him and threatened to kill him if he told anyone about the mob incident. Plaintiff reported to MIV officials that the police officer had threatened him, and

they moved him to another group home. But the police officer visited him at the new group home and threatened him again. Plaintiff then left his new group home.

## DISCUSSION

Under the applicable venue provision, claims under 42 U.S.C. § 1983 may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the judicial district where the person is domiciled, and any other entity with the capacity to sue and be sued, if a defendant, resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(1), (2).[2]

The City of New York, a municipal corporation, and the Board (now ACS), a New York City agency, reside in this judicial district and in the Eastern District of New York. *See* 28 U.S.C. §§ 112(b), (c), 1391(d).[3] MIV (now Catholic Charities of Staten Island) resides on Staten Island, in Richmond County, which is within the Eastern District of New York. *See* §§ 112(c),

---

[2] "[I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." § 1391(d).

[3] This judicial district – the Southern District of New York – is comprised of the following New York State counties: (1) New York (Borough of Manhattan), (2) Bronx, (3) Westchester, (4) Dutchess, (5) Rockland, (6) Orange, (7) Putnam, and (8) Sullivan. *See* 28 U.S.C. § 112(b). The Eastern District of New York is comprised of the following New York State counties: (1) Kings (Borough of Brooklyn), (2) Richmond (Borough of Staten Island), (3) Queens, (4) Nassau, and (5) Suffolk. *See* § 112(c).

1391(c)(2). Thus, under Section 1391(b)(1), this court and the United States District Court for the Eastern District of New York are proper venues for this action.

The alleged events giving rise to Plaintiff's claims, however, appear to have occurred on Staten Island, in the Eastern District of New York; Plaintiff does not allege any facts showing that a substantial part of the events or omissions giving rise to his claims occurred within this judicial district. Thus, under Section 1391(b)(2), the Eastern District of New York is a proper venue for this action.

Even if venue is proper here, the Court may transfer claims, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Moreover, courts may transfer cases on their own initiative. *See Cento v. Pearl Arts & Craft Supply Inc.*, No. 03-CV-2424, 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003) ("Courts have an independent institutional concern to see to it that the burdens of litigation that is unrelated to the forum that a party chooses are not imposed unreasonably on jurors and judges who have enough to do in determining cases that are appropriately before them. The power of district courts to transfer cases under Section 1404(a) *sua sponte* therefore is well established."); *see also Lead Indus. Ass'n Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (noting that "[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer Sua sponte").

In determining whether transfer is appropriate, courts consider the following factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative

5

facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 458-59 (S.D.N.Y. 2011); *see also N.Y. Marine and Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors).

Transfer of this action to the Eastern District of New York under Section 1404(a) would appear to be appropriate because: (1) a substantial part of the underlying events occurred on Staten Island; (2) all of the defendants are located there; and (3) it is likely that relevant documents and witnesses are located there. Accordingly, the Court directs Plaintiff to show cause within 30 days of the date of this order why the Court should not transfer this action, under Section 1404(a), to the United States District Court for the Eastern District of New York.

## CONCLUSION

The Court directs Plaintiff to show cause within 30 days of the date of this order why the Court should not transfer this action, under 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of New York. A declaration form is attached to this order for Plaintiff's convenience. Plaintiff may use that form to comply with this order.

If Plaintiff fails to comply with this order within the time allowed, or fails to show cause, the Court will transfer this action, under Section 1404(a), to the United States District Court for the Eastern District of New York.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and not service on the docket.

SO ORDERED.

Dated:   October 12, 2021
          New York, New York

                        /s/ Laura Taylor Swain
                          LAURA TAYLOR SWAIN
               Chief United States District Judge